ARMEN R. VARTIAN (Bar. No. 155766)
armen@.vartianlaw.com
LAW OFFICES OF ARMEN R. VARTIAN
1601 N. Sepulveda Blvd. #581
Manhattan Beach, CA 90266
(310) 372-1355

KEITH A. ATTLESEY (Bar No. 168470)
kattlesey@attleseystorm.com
ATTLESEY|STORM LLP
2552 Walnut Avenue #100
Tustin, CA 92780
(714) 508-4949

Attorneys for Plaintiff
Collectors Universe, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COLLECTORS UNIVERSE, INC., a Delaware corporation,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>K³B, INC., an Illinois corporation,<br><br>　　　　　Defendant. | Case No.:<br><br>COMPLAINT FOR VIOLATION OF LANHAM ACT; UNFAIR COMPETITION; BREACH OF CONTRACT; BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; AND DECLARATORY JUDGMENT |

COMPLAINT - 1

Plaintiff COLLECTORS UNIVERSE, INC., for its Complaint in this action, alleges upon information and belief as follows:

## JURISDICTION AND VENUE

1. This action arises under the Lanham Act, 15 U.S.C. §1125, and this Court has original jurisdiction of Plaintiff's federal claims under 15 U.S.C. §1125(a), 28 U.S.C. §1338(a) and (b), and 28 U.S.C. §1331 and 1332, and of Plaintiffs' California state law claims also under 28 U.S.C. §1332 and principles of supplemental jurisdiction.

2. Venue is appropriate in this Judicial District under 28 U.S.C. §1391(b) as Defendant does business and transacts business in this Judicial District, a substantial portion of the events, omissions and property which is the subject matter of this action are located in this Judicial District, and Defendant agreed by contract that this Judicial District is a convenient forum.

## PARTIES

3. At all times relevant hereto, Plaintiff COLLECTORS UNIVERSE, INC. ("CU") was and now is a Delaware corporation, with its principal place of business in Santa Ana, California, and was and now is engaged, *inter alia*, in the authentication and grading of coins, sports cards, and other collectibles.

4. Defendant K³B, INC. is, on information and belief, an Illinois corporation with its principal place of business in Peoria, Illinois.

# FACTS

5. CU owns and operates a division called Professional Coin Grading Service, which is known worldwide by dealers, collectors and investors by its abbreviation "PCGS."

6. PCGS is the leading coin authentication and grading service in the world, having graded millions of coins since its inception in 1986. CU has expended money, time and effort promoting PCGS's business under the PCGS name, and to make PCGS's name familiar to the public at large and to coin dealers and others involved in the coin industry. PCGS has built a valuable goodwill under the name PCGS and has become the recognized market leader in the business of authenticating and grading coins.

7. CU has used "PCGS" as a trademark since 1986 in multiple business lines, and the "PCGS" mark is part of many trademarks registered or previously registered to or used by CU, domestically and internationally, such as: PCGS Secure and PCGS 3000 and more recently: PCGS CMC and PCGS Banknote Grading.

8. In 2005, CU began authenticating and grading collectible paper currency (i.e., banknotes) under the name "PCGS Currency." PCGS's high repute among coin collectors transferred easily to PCGS Currency, as many coin collectors also collect banknotes, and PCGS Currency immediately became one of the leading banknote authentication and grading services.

9. PCGS Currency guaranteed the accuracy of its authentication and grading determinations by permitting anyone owning a PCGS Currency-graded banknote to

submit it to PCGS Currency for review.  If PCGS Currency determined that it had authenticated a counterfeit banknote, or had overgraded a genuine banknote, CU would pay the banknote owner the difference between the fair market value of the banknote as originally graded and its value in its true grade.  This was called the PCGS Currency Guarantee.

10.  On or about February 4, 2009, CU sold its banknote grading business to Defendant K³B.  The parties entered into, inter alia, an Asset Purchase Agreement and a Trademark License Agreement (the "License Agreement").

11.  Under the Asset Purchase Agreement, CU agreed to refrain from competing with K³B in the banknote grading business for a period of five years.  CU also agreed to indemnify K³B for liabilities in connection with banknotes submitted under the PCGS Currency Guarantee.  Indemnification was subject to certain limitations, including: (a) K³B had to notify CU when it received any indemnification claims, and permit CU to investigate and settle those claims; and (b) CU was not obligated to reimburse K³B for any claims until the sum total of such claims reached $50,000.

12.  Under the Trademark License Agreement, CU granted K³B a license to use the "PCGS Currency" mark in connection with a banknote grading service, for which privilege K³B agreed to pay CU a royalty based on PCGS Currency's sales, the payments to be made once annually on or before January 30th of each calendar year for the preceding year, and accompanied by a report detailing the calculation of the royalty.

13.  In the License Agreement K³B acknowledged CU's sole rights in the "PCGS Currency" mark, and obligated K³B, in all written materials containing the

mark, to include the following disclaimer: "PCGS Currency (SM) is a trademark of Collectors Universe, Inc., the use of this trademark is permitted by a license agreement with Collectors Universe, Inc. and Collectors Universe, Inc. is not affiliated with or responsible for any actions of the licensee under that agreement" (the "Disclaimer").

14. The License Agreement provided CU the right of termination in the event of a material breach by K³B.

15. In 2014, K³B failed to make any timely royalty payment, and likewise for 2015, K³B's payment was both late and incomplete.

16. K³B did not, for a period of years, include on its written materials the Disclaimer set forth in Paragraph 13 hereof. After CU complained, in 2015 K³B placed the Disclaimer on some, but not all of its written materials. Where the Disclaimer appears, it is inconspicuous and not located in proximity to "PCGS Currency" mark.

17. Starting at least in 2014, K³B has sought indemnification from CU for Guarantee claims for which K³B gave CU neither proper notice nor the ability to settle directly with the claimants, and before the sum total of those claims reached the $50,000 threshold. K³B forced CU to unknowingly indemnify K³B for these claims by simply deducting the claimed amounts from the 2014 royalty payments (which remain due to CU), without CU's consent. In addition, on information and belief K³B has paid third party Guarantee claims in excess of the PCGS Currency Guarantee's stated limits of $10,000 per banknote and required CU to make reimbursements.

18.  On the basis of the above, CU gave K³B written notice on May 5, 2015 that it was terminating the License Agreement.  K³B has objected to this notice, and through counsel has claimed that CU is not entitled to terminate the License Agreement.

19.  Commencing April of 2015, after expiration of the Asset Purchase Agreement's five-year non-compete period, CU re-commenced certifying and grading banknotes under the name of "PCGS Banknote Grading" and, in China only, "PCGS/CMC."  K³B has objected to CU's use of these names, and on at least one occasion has attempted to prevent CU from accepting banknotes for certification and grading at a dealer convention where K³B was also accepting banknotes as PCGS Currency.

## FIRST CAUSE OF ACTION
## LANHAM ACT

20.  CU repeats and realleges each and every allegation contained in Paragraphs 1-19 hereof as though set forth in full here.

21.  K³B's aforesaid acts constitute an actionable wrong under 15 U.S.C. §1125(a) in that K³B, by failing to apply the Disclaimer required by the License Agreement in all its written materials, knowingly and willfully used (in connection with the offering of goods and services in interstate commerce) a word, term, name, symbol, or device, or combination thereof, which is likely to cause confusion, mistake or to deceive regarding any association, affiliation, or approval by CU.

22. By reason of the foregoing unlawful acts, Defendant has caused, and is continuing to cause, substantial and irreparable damage and injury to Plaintiff and to the public and Defendant has benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

23. As a proximate and direct result of Defendants' acts, CU has sustained damages in an as yet unascertained amount to be proven at trial.

## SECOND CAUSE OF ACTION
## CALIFORNIA UNFAIR COMPETITION

24. CU incorporates each and every allegation contained in paragraphs 1-19 hereof as thought set forth in full.

25. K³B's conduct constitutes unfair competition under §§17200 *et seq.* of the California Business and Professions Code.

26. By reason of its unlawful acts as described herein Defendant has caused, and is continuing to cause, substantial and irreparable damage and injury to CU and to the public and Defendant has benefited from such unlawful conduct and will continue to carry out such unlawful conduct and to be unjustly enriched thereby unless enjoined by this Court.

27. CU has no adequate remedy at law.

28. As a proximate and direct result of Defendant's unlawful conduct and acts of unfair competition, CU has sustained damages in an as yet unascertained amount.

29. CU is entitled to an order under Business and Professions Code §17203 enjoining K³B from its unlawful activity and awarding CU restitution in the amount of any sums acquired by k3B by means of such activity.

## THIRD CAUSE OF ACTION
## BREACH OF CONTRACT

30. CU incorporates each and every allegation contained in paragraphs 1-19 hereof as thought set forth in full.

31. K³B has breached the Asset Purchase Agreement by, among other things, deducting indemnification payments from royalty without authority or consent.

32. K³B has also breached the Trademark License Agreement by, among other things, failing to make timely and complete royalty payments, and by failing to display the required Disclaimer concerning its relationship with CU on all its written materials.

33. As a proximate result of these breaches of contract, CU has sustained damages in an as yet unascertained amount, but in excess of $100,000.

## FOURTH CAUSE OF ACTION
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

34. CU incorporates each and every allegation contained in paragraphs 1-19 hereof as thought set forth in full.

35. A covenant of good faith and fair dealing is implied into the Asset Purchase Agreement and the Trademark License Agreement.

36. K³B breached this covenant through its actions as described elsewhere in this Complaint.

37. As a proximate result of these breaches, CU has sustained damages in an as yet unascertained amount, but in excess of $100,000.

## FIFTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

38. CU incorporates each and every allegation contained in paragraphs 1-19 hereof as thought set forth in full.

39. K³B is in material breach of the Trademark License Agreement for reasons set forth elsewhere in this Complaint.  K³B denies this, and contends that CU is not entitled to use the names "PCGS Banknote Grading," "PCGS/CMC" or any other name containing CU's trademarked name "PCGS" in connection with CU's banknote certification and grading business.

40. CU is entitled to a judgment (a) that it is entitled to terminate the Trademark License Agreement, and that the license reflected therein is at an end, and K³B's rights thereunder extinguished; and (b) that the names "PCGS Banknote Grading" and "PCGS/CMC" do not infringe any rights of K³B with or without termination of the License Agreement.

WHEREFORE, CU prays this Court for judgment on this Complaint:

(a) awarding CU its actual damages and three times its actual damages against K³B in an amount to be proved at trial;

(b) awarding CU reimbursement of its costs and attorney's fees in investigating this matter and bringing this lawsuit;

(c) permanently enjoining K³B against any infringing use of CU's marks;

(d) permanently enjoining K³B from any unlawful activity under California Business and Professions Code §17203 and awarding CU restitution in the amount of any sums acquired by K³B by means of such activity.

(e) Declaring that CU is released from the Trademark License Agreement;

(f) For such other and further relief as to the Court may be just.

Dated: July 6, 2015

LAW OFFICES OF ARMEN R. VARTIAN

By:__/Armen R. Vartian_____
Armen R. Vartian (Cal. Bar No. 155766)
1601 N. Sepulveda Blvd. #581
Manhattan Beach, CA 90266
(310) 372-1355
(866) 427-3820 (fax)